UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JESUS MANUEL CUEVAS,<br><br>Defendant. | Case No. 1:24-cr-00002-BLW-1<br><br>**MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S OBJECTION TO USE OF ILLEGALLY OBTAINED EVIDENCE** |

Pending before the Court is Defendant Jesus Manuel Cuevas's Objection to Use of Illegally Obtained Evidence (Dkt. 47). Because the Fourth Amendment's exclusionary rule does not apply to pretrial release revocation proceedings, the Court overrules Defendant's objection.

## **PROCEDURAL HISTORY**

On January 9, 2024, a federal grand jury returned a one-count indictment charging Defendant with unlawfully possessing a firearm after sustaining a felony conviction. (Dkt. 2.) Defendant was arrested on January 29, 2024, and appeared before this Court for his detention hearing on February 2, 2024 (Dkts. 7, 16.) At the detention hearing, the government requested that Defendant be detained, but the Court found that conditions of release could be fashioned that would reasonably assure his appearance and the safety of the community. (Dkt. 17.) The Court ordered Defendant released subject to these conditions. *Id.*

Relevant here, one of the conditions of Defendant's release was that he not violate federal, state, or local law. (Dkt. 17.) Another condition of his release was that he not possess any firearms. *Id.*

1

On May 9, 2024, Defendant was riding in a car that was stopped by Nampa police. During the course of the stop, the vehicle was searched, and police found a loaded gun under the seat where Defendant had been sitting. Police also found a baggie of suspected methamphetamine on the ground, in an area where dash camera footage showed Defendant dropping something.

Based on these facts, Defendant was arrested and charged in Canyon County with possession of a firearm by a prohibited person, possession of methamphetamine, and two counts of destruction of evidence. Defendant moved to suppress the gun and drug evidence. On September 19, 2024, a state court judge granted the motion. The state court judge found that police had reasonable suspicion for the traffic stop, but unlawfully prolonged the stop after a drug dog failed to alert on the vehicle. As a result of this ruling, the state court charges against Defendant were dismissed.

Defendant, consequently, was released from state custody and transferred to federal custody to resolve a petition to revoke his pretrial release. This petition, which was promptly filed on May 10, 2024, alleges that Defendant violated state law on May 9, 2024 by unlawfully possessing a firearm, possessing methamphetamine, and destroying evidence. (Dkt. 25.)[1]

Defendant appeared before this Court for pretrial release revocation proceedings on October 1, 2024 and October 8, 2024. At these hearings, Defendant objected to the introduction of the evidence that had been suppressed by the state court judge.

---

[1] After his initial appearance, United States probation filed an amended petition alleging that Defendant's conduct on May 9, 2024 also violated the conditions of Defendant's release that prohibited him from possessing a firearm and from unlawfully possessing a narcotic drug or other controlled substance. (Dkt. 43.)

2

**DISCUSSION**

Defendant argues that the Court must turn a blind eye to evidence of his unlawful possession of a firearm and methamphetamine while on pretrial release because that evidence was obtained in violation of his Fourth Amendment rights. The Bail Reform Act does not support this conclusion. Nor does relevant Fourth Amendment case law.

First, pretrial release revocation hearings are governed by 18 U.S.C. § 3148. While this section does not contain any evidentiary guidelines, it references and partially incorporates § 3142, the section of the Bail Reform Act that governs initial detention hearings. Section 3142, in turn, provides that "[t]he rules concerning admissibility of evidence in criminal trials do not apply" at detention hearings. 18 U.S.C. § 3142(f).[2] Numerous courts have held that this language permits a court to consider evidence that has been suppressed under the Fourth Amendment when determining whether there are conditions of release that can reasonably assure the defendant's appearance and the safety of the community. *See*, *e.g.*, *United States v. Pina-Aboite*, 97 F. App'x 832, 835 (10th Cir. 2004) (unpublished) (at a detention hearing, a district court may consider suppressed evidence) and *United States v. McCarty*, No. CR. 08-00513 JMS, 2009 WL 5061577, at *3, n.4 (D. Haw. Dec. 24, 2009) (same).

In *United States v. Garay*, No. 21-CR-00062-JJM-03, 2024 WL 1240518 (D.R.I. Mar. 22, 2024), the Court undertook a comprehensive survey of this case law (i.e., the cases where courts have considered the impact of a suppression order on a prior detention ruling). *Id.* at *4-

---

[2] Section 3142(f) also protects a defendant's right to counsel at a detention hearing and recognizes that a defendant may testify, present witnesses, cross-examine witnesses, and present information by other means, including proffer. 18 U.S.C. § 3142(f). Courts routinely afford defendants these rights at all detention proceedings, including pretrial revocation proceedings.

3

6.[3]  Based on this survey, the Court concluded that judges enjoy discretion under § 3142(f) "to consider inherently trustworthy suppressed evidence for purposes of [a Bail Reform Act] detention analysis." *Id.* at *6.

This makes good sense.  At a probable cause hearing under Rule 5.1, the defendant "may not object to evidence on the ground that it was unlawfully acquired." Fed. R. Crim. P. 5.1(e).  It would be illogical, as well as unwieldy,[4] for different standards to apply to detention hearings under § 3142 and probable cause determinations under § 3148. *See United States v. Josaphat*, No. CR 21-10044-DJC, 2021 WL 2712270, at *1 (D. Mass. July 1, 2021) (concluding that the same standards apply under § 3148, § 3142(f), and Rule 5.1(e)).  Notably, *Josaphat* is the only case the Court or the parties could find regarding § 3148 and the exclusionary rule.  It relies on the language of § 3142(f) and Rule 5.1(e) to conclude that the exclusionary rule does not apply in the pretrial release revocation context.  The Court agrees.

Second, even if the Bail Reform Act and Federal Rules of Criminal Procedure were silent on the issue, the Court would not apply the exclusionary rule as a matter of course.  It is well-established that the exclusionary rule "does not proscribe the introduction of illegally seized evidence in all proceedings or against all persons," but applies only in contexts where "its deterrence benefits outweigh its substantial social costs." *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 363 (1998).  This has proven to be a challenging standard for those – like Defendant – who seek to extend the exclusionary rule into novel realms.  As the Supreme Court and Ninth

---

[3] The vast majority, if not all, of these cases involve federal suppression orders followed by a motion to revisit the detention hearing in the same case.

[4] *See Garay*, 2024 WL 1240518 at *3-4 (explaining that § 3142(f) avoids turning detention hearings into "de-facto mini-trials" with built-in suppression hearings).

Circuit have warned, "[s]uppression of evidence has always been our last resort, not our first impulse." *United States v. Dreyer*, 804 F.3d 1266, 1278 (9th Cir. 2015) (citing *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)) (cleaned up).

> The exclusionary rule generates substantial social costs, which sometimes include setting the guilty free and the dangerous at large. We have therefore been cautious against expanding it, and have repeatedly emphasized that the rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging its application.

*Id.* (quoting *Hudson*, 547 U.S. at 591).

Consistent with this warning, the Supreme Court and Ninth Circuit have "repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials." *Scott*, 524 U.S. at 363. In *Scott*, for example, the Supreme Court held that the exclusionary rule "does not bar the introduction at parole revocation hearings of evidence seized in violation of parolees' Fourth Amendment rights." Similarly, in *United States v. Hebert*, 201 F.3d 1103 (9th Cir. 2000), the Ninth Circuit held that "the exclusionary rule does not apply to supervised release revocation hearings." *Id.* at 1104. And, in *United States v. Winsett*, 518 F.2d 51, 55 (9th Cir. 1975), the Ninth Circuit held that evidence obtained in violation of the Fourth Amendment is generally admissible in probation revocation proceedings.[5]

Here, Defendant is on pretrial release, not release after a conviction. The reasoning of *Scott*, *Herbert*, and *Winsett*, however, remain persuasive. Like in the probation and parole

---

[5] As the government points out, the Supreme Court has also declined to extend the exclusionary rule to grand jury proceedings, *United States v. Calandra*, 414 U.S. 338, 350 (1974), civil tax proceedings, *United States v. Janis*, 428 U.S. 433, 454 (1976), and civil deportation hearings, *Immigration & Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032, 1034 (1984). In addition, the Ninth Circuit has narrowed the application of the exclusionary rule at sentencing hearings, *United States v. Kim*, 25 F.3d 1426, 1435 (9th Cir. 1994) and to Rule 404(b) evidence, *United States v. Lopez-Martinez*, 725 F.2d 471, 476 (9th Cir. 1984).

context, the application of the exclusionary rule to pretrial release revocation proceedings would provide only marginal deterrence benefits. The evidence Defendant challenges has already been suppressed in his state prosecution, thereby frustrating the goals of the state law enforcement officers whose conduct is at issue. Any additional deterrence to be had by suppressing this evidence in his pretrial release revocation proceedings is far outweighed by the costs of making a half-informed detention decision that threatens the safety of the Court's probation officers and the public and that requires the Court to countenance known violations of the conditions of release.

> As one district court in the Ninth Circuit has explained,
>
> A court should have as much information as possible to evaluate properly whether a defendant poses any risk of danger to the community if released. Thus, even though this Court suppressed evidence for purposes of trial, that evidence may speak loudly concerning community safety because it involves convicted felons in unlawful possession of multiple weapons and cocaine. The Court concludes, therefore, consideration of the suppressed evidence is warranted under cost-benefit analysis, particularly when applying the statutory release factors that bear on community safety.

*United States v. Jay*, 261 F. Supp. 2d 1235, 1240 (D. Or. 2003). The interests here are even higher. Defendant's conduct not only speaks to his dangerousness; it displays a blatant disregard for this Court's orders. This raises serious concerns about the risks he poses to the probation officers tasked with monitoring his pretrial release.

Defendant does not cite, and the Court could not find, any cases applying the exclusionary rule in these circumstances. Given the weight of the cases discussed in this decision, the Court declines to extend the exclusionary rule into the pretrial release revocation context.[6]

---

[6] Defendant does not argue that the Fourth Amendment violation was so egregious the evidence should be suppressed under *Adamson v. Comm'r*, 745 F.2d 541 (9th Cir. 1984), *Orhorhaghe v.*

## **ORDER**

IT IS HEREBY ORDERED that Defendant Jesus Manuel Cuevas's Objection to Use of Illegally Obtained Evidence (Dkt. 47) is DENIED.

DATED: October 09, 2024

Raymond E. Patricco
Chief U.S. Magistrate Judge

---

*INS*, 38 F.3d 488, 492-493 (9th Cir. 1994) and progeny.  Nor does the state court record reflect an egregious violation.  The Court consequently does not address this issue.  *See Grimes v. Comm'r*, 82 F.3d 286, 289 n.3 (9th Cir. 1996) (refusing to consider an egregiousness exception that was not argued).  Even if the issue had been raised, the Court is skeptical that an egregiousness exception should be made in the pretrial release revocation context.  *See* 18 U.S.C. § 3142(f) and *Lopez-Rodriguez v. Holder*, 560 F.3d 1098, 1099 (9th Cir. 2009) (Bea, J., dissenting from denial of reh'g en banc) (discussing the tension between current Ninth Circuit and Supreme Court law regarding the application of the exclusionary rule to civil deportation proceedings).